## THE NEW YORK GUARANTY AND INDEMNITY COMPANY *vs.* TERRENCE FLYNN and others.

B., H. & Co. agreed to sell to S. & Co. 100 bales of cotton, and shipped it from Savannah to B. at New York with instructions to inquire about the standing of S. & Co., and not to deliver the cotton or give up the bill of lading, if he had any doubt about a draft, accompanying the same, being met on maturity, by S. & Co. The draft was presented to, and accepted by S. & Co. on the arrival of the cotton. The cotton was received by B. and stored in a warehouse. B., after inquiry, not being satisfied as to the standing of S. & Co. refused to deliver the cotton on credit, and held it until the draft became due ; agreeing with S. & Co. that if the draft was paid, the latter should have the cotton; if not, S. & Co. were to give up the cotton, and allow B. to sell it. The draft not being paid, at maturity B., on the 17th of April, sold the cotton to D. F., and delivered it. D. F. procured a loan from the plaintiff, upon the cotton, on a warehouse receipt, and the plaintiff took the cotton into its custody. On the 3d of April S. & Co. sold 93 bales of the cotton, to T. F., (the defendant,) who, on the 10th of April, tendered B. a check, which he refused. On the 11th of April, the sheriff levied on the cotton under an attachment against the property of S. & Co. T. F. brought an action against B. and the sheriff, upon which the coroner took the said 93 bales from the plaintiff. In an action against T. F. and the coroner, to recover the value of the cotton;

*Held*, 1. That no delivery having taken place, and no payment having been made and accepted, the title to the cotton was never in S. & Co.; and the levy by the sheriff, or the sale to T. F. was of no validity, and transferred no title, either to the sheriff or to T. F.

2. That the tender of payment, by T. F. was of no avail, because he only tendered for 93 bales; because the tender gave him no right to the property, if B. refused to deliver, but left him to an action for damages; and because T. F. had no title to all the property, even from S. & Co., who were his vendors.

3. That the sale to D. F. was a legal sale, within the powers possessed by B., and D. F. obtained a good title.

4. That the correct rule of damages was the value of the cotton at the time of its taking, and interest.

· *Held*, also, that although the admission was that the property was taken on the 17th of April, yet that inasmuch as the evidence showed that the correct date was the 25th, and it was apparent that the case was tried on that supposition, the court was warranted in disregarding the erroneous admission, and might be governed by the evidence.

APPEAL from a judgment entered on the verdict of a jury.

The opinion states the essential facts.

*By the Court,* INGRAHAM, P. J.   The decision of this case rests upon the question whether there was such a sale and delivery by Brigham, Holet & Co. to Shute & Co. as would give them a right to sell to Terrence Flynn the 93 bales of cotton which is the property in controversy in this action.

Brigham, Holet & Co. had agreed to sell to Shute & Co. 100 bales of cotton.   They shipped the cotton from Savannah to D. H. Baldwin, New York, with instructions not to deliver the cotton or give up the bill of lading.   On its arrival, Baldwin sent his drayman to take the cotton to the warehouse.   With the bill of lading, Baldwin received a draft on Shute & Co. for the price of the cotton.   The draft was accepted by Shute & Co. On the same day on which the bill of lading was received, Baldwin also received a letter from Holet, directing him to inquire about the standing of Shute & Co., and in no event to give up the bills of lading, if he had any doubt about the draft being met on maturity.   On making inquiries, Baldwin was not satisfied as to the standing of Shute & Co. and refused to deliver the cotton on credit.   Baldwin held the cotton until the draft

became due. On the maturity of the draft, it was not paid, and Baldwin sold the cotton to Dennis Flynn, who paid for it, and it was delivered to him by the receipt. This sale was on the 17th of April, 1868. On the 11th of April, the sheriff had levied on the cotton, under an attachment against the property of Shute & Co.

On the 3d of April, Shute & Co. sold 93 bales to Terrence Flynn, and on the ·10th of April said Flynn tendered Baldwin a check, which he refused, on the ground that the draft had gone to protest, and he was entitled to special damages. On the 11th of April, Shute and Flynn went to Baldwin, and Flynn tendered to Baldwin $13,000, and demanded the cotton.

Dennis Flynn procured a loan from the plaintiff on the cotton, on a warehouse receipt for the cotton. There was an agreement between Baldwin and Shute that if the draft was paid, the latter should have the cotton ; if not, Shute & Co. agreed to give up the cotton and allow Baldwin to sell it, to cover the draft, without further trouble.

There was a subsequent taking of the 93 bales of cotton, on behalf of Terrence Flynn, and a difference exists as to the date. The admission being that it was on or about the 17th of April, 1868, while the evidence of the storehouse keeper says it was taken on the 25th of April. The difference, however, is not important, unless as to the rate of interest ; and that was calculated from the 25th of April.

Whatever may be the rights of the parties in a claim for damages upon the contract, it seems to be clear that there never was a delivery of the property to Shute & Co. in pursuance of it. The property was shipped to Baldwin with instructions not to deliver the same unless he was satisfied. He refused to deliver. By a special agreement with Shute he was allowed to accept the draft, on the condition that if it was not paid at matu-

rity, the cotton was to be sold by Baldwin. No delivery having taken place, and no payment having been made and accepted, the title to the cotton was never in Shute & Co., and the levy by the sheriff, or the sale to Terrence Flynn, was of no validity, and transferred no title either to the sheriff or to Terrence Flynn. The tender of payment by Terrence Flynn was of no avail, because he only tendered for 93 bales; because the tender gave him no right to the property if Baldwin refused to deliver, but left him to the action for damages; and because Terrence Flynn had no title to all the cotton even from Shute & Co., who were his vendors.

The sale to Dennis Flynn was a legal sale within the powers possessed by Baldwin, and he obtained a good title.

The rule of damages, as claimed by the plaintiff, was its value at the time of taking, and interest; and that seems to have been the amount adopted by the jury. This rule was correct.

Although the admission was that the property was taken on the 17th of April, yet when the evidence shows that the correct date was the 25th, and it is apparent that the case was tried on that supposition, the court is warranted in disregarding the erroneous admission, and may be governed by the evidence.

We think there are no errors calling for a reversal of the judgment.

 Judgment affirmed.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Davis*, Justices.]